USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___08/31/2021____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
ASHLEY PRENDERGAST, :
:
**Plaintiff,** :
:
-against- : **19-cv-7314 (ALC) (BCM)**
:
: **OPINION & ORDER**
:
PORT AUTHORITY OF NEW YORK AND NEW :
JERSEY, ET AL., :
:
**Defendants.** :
-------------------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Ashley Prendergast (hereinafter, "Ms. Prendergast" or "Plaintiff") brings this

action against Port Authority of New York and New Jersey (hereinafter, "Port Authority" or

"Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et*

*seq*, for discrimination on the basis of gender and retaliation for complaining about

discriminatory treatment.[1] Currently before the Court is Defendant's motion for summary

judgment. For the reasons herein, Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

### I.    Factual Background

The following factual summary consists of only undisputed material facts unless otherwise

indicated. Where the facts are subject to legitimate dispute, they are construed in favor of the non-

moving party. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 283-84 (2d Cir. 2005) (internal

citation omitted).

---

[1] Plaintiff initially also asserted claims against James Sabatelli, but he was voluntarily dismissed from the action on
October 8, 2020. ECF No. 27.

Plaintiff was originally hired as a temporary Passenger Information Agent for PATH from April 15, 2016 through November 15, 2017. Pl.'s R. 56.1 Counterstatement ("Pl.'s 56.1 Resp.") ¶ 8. While working there, she was counseled on her poor job performance. *Id.* ¶ 9.[2] In September 2017, Plaintiff applied for a Supervising Office Assistant position within the Port Authority. *Id.* ¶ 15. Plaintiff was hired as a probationary Supervising Office Assistant ("SOA") in the Security Business Resource Management and Planning Department at John F. Kennedy International Airport ("JFK Airport") on November 17, 2017. *Id.* ¶ 16. Plaintiff's employment was at-will, and she could be terminated at any time for any reason during her 12-month probationary period. *Id.* ¶ 17. As an SOA at JFK Airport, Plaintiff directly reported to James Sabatelli, and was responsible for staffing, office equipment, and ensuring business continuity. *Id.* ¶ 18. In August 2018, Plaintiff complained about harassment by two female police officers, Janice Hawkins and Janine DiTomasso. *Id.* ¶ 21.

Plaintiff testified that she complained to her union and to the Port Authority's anonymous hotline regarding the treatment she received from these officers. *Id.* ¶ 28. Defendant took some actions to address the situation with the two officers, including by moving one of the officers and by closing the door to Plaintiff's workspace. *Id.* ¶ 29. Plaintiff was not satisfied with this resolution and spoke with Mr. Sabatelli about complaining to the Port Authority's EEO Office ("EEO"). *Id.* ¶¶ 30-31. Mr. Sabatelli commented that her work attire could be contributing to the conflicts she

---

[2] While Plaintiff states that there "is an issue of material fact as to whether Plaintiff's prior job performance with PATH played any role in her final dismissal," Pl.'s 56.1 Resp. ¶ 9, she does not dispute the fact that she was counseled on her poor job performance while at PATH. Plaintiff further asserts that Sandro Ortiz, her supervisor's boss, testified that "only one specific incident 'struck' him concerning Ms. Prendergast's alleged conduct at PATH, an alleged refusal to accept instruction regarding changing signage." *Id.* ¶ 10. This is a mischaracterization of Mr. Ortiz's testimony, who testified that PATH provided him "a list of her incidents that she had with PATH while she was a temp agent at PATH." Soto Decl. Ex. H ("Ortiz Dep. Tr.") at 66:15-19. When asked whether he recalled what those incidents were, he responded that "[o]ne, specifically, incident that struck [him]" was her refusal to change signage. *Id.* at 66:20-67:6. Mr. Ortiz then went on to state that this incident "supported [his] overall view of moving forward with insubordination more specifically with the termination." *Id.* at 67:16-19.

was having with the officers, though the exact intent and content of Mr. Sabatelli's comments is disputed. *Id.* ¶ 32; *compare* Alterman Decl. Ex. F ("Prendergast Dep. Tr.") at 172:14-174:6 *with* Alterman Decl. Ex. H ("Sabatelli Dep. Tr.") at 40:16-41:7.

On September 11, 2018, Plaintiff filed a complaint with the EEO regarding the harassing behavior from officers Hawkins and DiTomasso. *Id.* ¶¶ 24, 33. On September 13, 2018, Natalynn Dunson-Harrison and Wayne Turner interviewed Plaintiff and Mr. Sabatelli at JFK Airport. *Id.* ¶ 34.[3] While Plaintiff's complaint was being investigated, several incidents occurred. First, on September 18, 2018, Mr. Sabatelli instructed Plaintiff to continue cross-training staff on the vendor invoice processing system after he learned that she had unilaterally eliminated the system without his approval. *Id.* ¶ 38. Mr. Sabatelli also counseled Plaintiff on her excessive cell phone use, though whether this occurred is disputed. Alterman Decl. Ex. M at PA000120; Soto Decl. Ex. D. ("I have never been counseled by [Mr. Sabatelli] or written up. I was always praised by him for doing a great job."); Prendergast Dep. Tr. at 133:24-135:3. On October 23, 2018, Mr. Sabatelli sent Plaintiff an email requesting that she arrange to have three boxes of paper put away when she arrived at work because they were a potential trip hazard. Pl.'s 56.1 Resp. ¶ 39; Soto Decl. Ex. B at PA000361. Instead of complying with the request, she said other employees should handle the task and copied other staff members on the response to Mr. Sabatelli. Pl.'s 56.1 Resp. ¶ 39, Soto Decl. Ex. B at PA000359-61.[4]

Mr. Sabatelli raised Plaintiff's conduct with his supervisor, Sandro Ortiz. Pl.'s 56.1 Resp. ¶ 40. Mr. Ortiz, in turn, reached out to PATH to determine whether she had any similar issues

[3] The main dispute of material fact is whether Plaintiff raised any complaints concerning gender based discriminatory conduct from Mr. Sabatelli during the Port Authority EEO investigation into Plaintiff's complaints regarding officers Hawkins and DiTommasso. *See, e.g.*, Pl.'s 56.1 Resp. ¶¶ 29, 31, 34-36, 44.
[4] Plaintiff asserts that there is "an issue of material fact as to whether the so-called 'issues' occurred and/or were blown out of proportion." Pl.'s 56.1 Resp. ¶ 37. However, none of the citations to the record bring into dispute whether the first or third incidents actually occurred.

while at PATH. *Id.* ¶ 41. After that, the decision was made to terminate Plaintiff's probationary employment. *Id.* ¶ 42. On October 26, 2018, a request was submitted for Plaintiff's termination. *Id.* ¶ 43; *see also* Alterman Decl. Ex. M. The request stated that she had "continually demonstrated an inability to comply with the Port Authority's rules and regulations, as well as various agency and departmental policies." Alterman Decl. Ex. M at PA000120. The three specific instances discussed above were cited as examples. *Id.* at PA000120-21. The request for Plaintiff's termination was approved. Pl.'s 56.1 Resp. ¶ 43.

## II.    Procedural History

Plaintiff filed a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2018. ECF No. 1 ("Compl.") ¶ 7. On May 8, 2019, Plaintiff was issued a right to sue letter. *Id.* Plaintiff commenced this action on August 6, 2019, Compl., and filed an Amended Complaint on December 3, 2019, ECF No. 7 ("Am. Compl."). Defendant filed its Answer to Plaintiff's Amended Complaint on January 23, 2020. ECF No. 13. On January 24, 2020, the Court referred the case to Magistrate Judge Barbara C. Moses for General Pretrial. ECF No. 14. A mediation conference was held on September 1, 2020 but was unsuccessful in resolving any issue in the case. ECF No. 21. On October 5, 2020, Plaintiff filed a notice of voluntary dismissal as to Defendant James Sabatelli, which was so ordered by this Court on October 8, 2020. ECF Nos. 26-27. Discovery closed on November 25, 2020. ECF Nos. 24, 29. The Court granted Defendant leave to file a motion for summary judgment on December 30, 2020. ECF No. 33. Defendant filed a motion for summary judgment and supporting memorandum of law ("Def.'s Mot.") on January 29, 2021. ECF Nos. 36, 39. Plaintiff filed her opposition brief ("Pl.'s Opp.") on February 12, 2021. ECF No. 40. Defendant filed a reply brief

in further support of its motion for summary judgment ("Def.'s Reply") on February 19, 2021.

ECF No. 43. The Court deems Defendant's motion for summary judgment to be fully briefed.

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material

fact and the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138,

148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial

burden at summary judgment can be met by pointing to a lack of evidence supporting the non-

movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movant meets their initial burden, the

non-movant may defeat summary judgment only by adducing evidence of specific facts that raise

a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. The Court is to

believe the evidence of the non-movants and draw all justifiable inferences in their favor,

*Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions

that are unsupported by arguments or facts. *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77

F.3d 603, 615 (2d Cir. 1996). "Summary judgment is appropriate even in discrimination cases,

for, as [the Second Circuit has] noted, 'the salutary purposes of summary judgment—avoiding

protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other

areas of litigation.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 40-41 (2d Cir. 2000) (quoting

*Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

**DISCUSSION**

The Court now considers whether Defendant Port Authority is entitled to summary judgment on Plaintiff's claims that (1) she was retaliated against for engaging in protected activity; and (2) that she was discriminated against on the basis of gender.

**I.      Retaliation**

The Court begins its analysis with Plaintiff's claims that she was retaliated against for engaging in protected activities. For the reasons that follow, Defendant is entitled to summary judgment on this claim. "Title VII [of the Civil Rights Act of 1964] provides that [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89-90 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted). Even if an employee is not the victim of prohibited discrimination, Title VII protects her against retaliation for protesting against such discrimination. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 285 (2d Cir. 1998) (citing *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

Federal retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Under the first step of the *McDonnell* framework, "the plaintiff must establish a prima facie case of retaliation by showing 1) 'participation in a protected activity'; 2) the defendant's knowledge of the protected activity; 3) 'an adverse employment action'; and 4) 'a causal connection between the protected activity and the adverse employment action.'"

*Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). The Supreme Court has held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). However, a plaintiff may still "demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity." *Zann Kwan*, 737 F.3d at 845.

If a plaintiff establishes a *prima facie* case of retaliation such that a presumption of retaliation arises, the burden next shifts to the defendant to demonstrate some legitimate, non-retaliatory reason for the adverse decision or action. *McDonnell*, 411 U.S. at 802; *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011). If the defendant carries that burden, the defendant is then entitled to summary judgment unless the plaintiff comes forward with evidence showing that the "non-retaliatory reason is a mere pretext for retaliation," *Zann Kwan*, 737 F.3d at 845, and that the plaintiff's "protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 570 U.S. at 362.

To prove that retaliation was a but-for cause of an adverse employment action, a plaintiff may demonstrate "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action." *Zann Kwan*, 737 F.3d at 846. A reasonable juror could conclude from such discrepancies "that the explanations were a pretext for a prohibited reason." *Id.* (citing, *inter alia*, *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105-07 (2d Cir. 2001)). To show pretext and retaliatory motive, a plaintiff "may rely on evidence comprising her prima facie case, including temporal proximity, together with

other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Id*. at 847 (citing *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)).

### A. *Prima Facie* Case of Retaliation

There is no dispute that Defendant was aware of the alleged protected activity or as to the fact that Plaintiff's termination constituted an adverse employment action. Thus, the Court focuses its analysis on the first and last factors.

### 1. Participation in a Protected Activity

First, the Court considers whether Plaintiff's conduct constitutes protected activity. The Second Circuit has held that "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at *conduct prohibited by Title VII*." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107-108 (2d Cir. 2011) (quoting *Galdieri-Ambrosini*, 136 F.3d at 292) (internal quotation marks omitted) (emphasis in original), *cert. denied*, 565 U.S. 1260 (2012). Accordingly, a plaintiff fails to state a *prima facie* case for retaliation when they make "generalized" complaints that their employer "could not reasonably have understood [to be] complaining of 'conduct prohibited by Title VII.'" *Id.* (internal citations omitted).

Here, Plaintiff asserts that she was engaged in two instances of protected activity: the formal complaint she made against officers Hawkins and DiTomasso and the informal complaint she allegedly made regarding Mr. Sabatelli's discriminatory conduct against her. Pl.'s Opp. at 12-13. As to the former, there is nothing in the record establishing that Plaintiff's complaints against officers Hawkins and DiTomasso concerned harassment on the basis of race, color, religion, sex or national origin. *See, e.g.*, Pl.'s 56.1 Resp. ¶ 21-22. The complaints against these

officers involved allegations that they referred to Plaintiff as a "child" and "a baby;" and that they subsequently retaliated against her after she complained to their management by defacing her name on bulletin board documents and by complaining to Mr. Sabatelli that she dressed inappropriately for the workplace. Soto Decl. Ex. B. at PA000357. Because Defendant could not reasonably have understood her to be complaining of conduct prohibited by Title VII, this alleged instance of protected activity does not suffice to state a *prima facie* case for retaliation.

As to the latter, Plaintiff's assertion that she made an informal complaint about Mr. Sabatelli's gender based discriminatory conduct against her is disputed by the parties. *See, e.g.* Pl.'s 56.1 Resp. ¶¶ 29, 31, 34-36, 44. Ms. Dunson-Harrison's investigation summary revealed that during the interview with the EEO officers, Plaintiff "opined that Mr. Sabatelli should not have suggested she wear looser cloths [sic] and tone it down because she dresses appropriately for the workplace" but that she "made no other allegations against Mr. Sabatelli at that time." Soto Decl. Ex. B at PA000357. Assuming *arguendo* that the investigation report supports an inference that she did make an informal complaint about Mr. Sabatelli's alleged gender based discriminatory conduct at some point prior to her termination and that she did engage in protected activity, her claim still fails for the reasons discussed below.

### 2. Causal Connection Between the Protected Activity and the Adverse Employment Action

Defendant asserts that Plaintiff "relies simply on the fact that she complained about discrimination (not directed toward Sabatelli) and was thereafter terminated, but she ignores her own conduct leading up to her termination" and that "looking at the evidence as a whole, the only inference that arises out of the circumstances of Plaintiff's termination is that of her own incompetence." Def.'s Mot. at 7. Plaintiff counters that there is an issue of material fact as to

whether Plaintiff was dismissed under circumstances giving rise to an inference of discriminatory intent. Pl.'s Opp. at 10.

"[T]emporal proximity can demonstrate a causal nexus" between protected activity and an adverse employment action. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir.), *cert. denied*, 534 U.S. 951 (2001). Assuming *arguendo* that her complaints against Mr. Sabatelli were made during the investigation into Plaintiff's complaints against officers Hawkins and DiTomasso in September 2018, the decision to terminate her a little over a month later, in October 2018, on the basis of incidents that occurred in September and October 2018, permits the inference of a causal connection. *See Garcia v. Yonkers Bd. of Educ.*, 15-cv-767, 2018 WL 4007648, at *7 (S.D.N.Y. Aug. 21, 2018), *aff'd*, 803 F. App'x 441 (2d Cir. 2020).

### B.  Non-Pretextual Non-Retaliatory Reason for the Adverse Decision

Even though assuming *arguendo* that Plaintiff engaged in protected activity Plaintiff has carried her burden to establish a *prima facie* case of retaliation, Defendant would still be entitled to summary judgment because it carried its burden to show a non-pretextual, legitimate, non-retaliatory reason for Plaintiff's termination. *McDonnell*, 411 U.S. at 802; *Brennan*, 650 F.3d at 93. Defendant asserts that Plaintiff was terminated "after she demonstrated her inability to fulfill the duties and responsibilities of the Supervising Office Assistant, which included working with Sabatelli and not questioning his authority when he gave her instructions on the simplest of tasks." Def.'s Mot. at 8. Further, the request for termination memorandum stated that during her 12-month probationary period, she had "continually demonstrated an inability to comply with the Port Authority's rules and regulations, as well as various agency and departmental policies." Alterman Decl. Ex. M at PA000120. Three specific instances were given as examples:

(1) On September 18, 2018, Mr. Sabatelli learned that Plaintiff unilaterally eliminated a process for cross-training other staff on the command's vendor invoice processing

system, which was essential to ensure business continuity. *Id.* Mr. Sabatelli instructed Plaintiff to reinstate this process immediately. *Id.*

(2) That same day, Mr. Sabatelli spoke with Plaintiff regarding excessive use of her personal cell phone after he had previously counseled her on the same subject. *Id.* According to the termination request, she had continued to use her personal cell phone excessively during work hours. *Id.*

(3) On October 23, 2018, Mr. Sabatelli emailed Plaintiff to put away three boxes of paper. *Id.*; *see also* Soto Decl. Ex. B at PA000361. Plaintiff responded by stating that if she was not there she could not "put something away" and to "advise all the staff members who use paper to put away as needed." Soto Decl. Ex. B at PA000361. Mr. Sabatelli responded and let her know that he was not asking her to put something away when she was not there and that they had "spoken about this several times because I am concerned of a safety issue. I don't want someone tripping over it and blaming us." *Id.* at PA000360. Plaintiff responded that if she was not there, no one should be "waiting on me to put it away because of the fact that someone can trip over it. So instead of waiting on me to put it away, the staff members can also help to [sic] that . . . It is a safety issue to wait on me to move a box of paper because I am not here all the time. I am the Supervising Office Assistant, so I control the ordering of supplies, and I audit them and put them away, however paper is something universal that everyone uses . . ." *Id.* Plaintiff also copied multiple employees who were not on Mr. Sabatelli's original email to Plaintiff. *Id.* Mr. Sabatelli then responded that this was not up for debate and that she should take care of it. *Id.* Plaintiff then continued to argue with Mr. Sabatelli in a subsequent response. *Id.* at PA000359.

While the fact that Plaintiff was counseled regarding her excessive cell phone use is disputed, there is still sufficient undisputed evidence offered as to the proffered reasons for Plaintiff's termination, such that Defendant has carried its burden to show a non-pretextual, legitimate, non-retaliatory reason for Plaintiff's termination. *Gill v. Mount Sinai Hosp.*, 160 F. App'x 43, 44 (2d Cir. 2005) (summary order) (affirming district court decision granting defendant summary judgment where defendant had "articulated legitimate, nondiscriminatory reasons for her termination, namely her failure to complete her job duties, her inability to take direction, and her confrontational and unprofessional behavior").

### C. Pretext

The burden now shifts back to Plaintiff to show that Defendant's proffered reasons are pretextual. "Title VII retaliation claims require proof that the desire to retaliate was the but-for causation of the challenged employment action." *Nassar*, 570 U.S. at 352 (internal citations omitted). To prove that retaliation was a but-for cause of an adverse employment action, a plaintiff may demonstrate "weaknesses, implausabilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action," *Zann Kwan*, 737 F.3d at 846, from which a reasonable juror could conclude "that the explanations were a pretext for a prohibited reason." *Id.* (citing, *inter alia*, *Byrnie*, 243 F.3d at 105-07). "[T]emporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam). Aside from conclusory statements that a "factfinder could reasonably find that the excuses given for dismissal are pretextual," *see, e.g.*, Pl.'s Opp. at 11, Plaintiff provides no support for the assertion that Defendant's reasons for termination are pretextual. This is plainly insufficient to meet Plaintiff's burden.

Thus, Defendant is entitled to summary judgment on the basis of its legitimate non-discriminatory reason to fire Plaintiff, which Plaintiff has failed to show to be pretextual.

### II.    Discrimination

The Court now turns to Plaintiff's claim of discrimination based on gender. To establish a *prima facie* case of gender discrimination under Title VII, a plaintiff must demonstrate the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128,

138 (2d Cir. 2003) (citing *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002)). Once a plaintiff has established a *prima facie* case of age or gender discrimination, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the [adverse action].'" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)) (internal quotation marks omitted). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

As discussed above, even assuming *arguendo* that Plaintiff carried her initial burden to show a *prima facie* case of gender discrimination, summary judgment is still warranted because Defendant has shown a legitimate, non-discriminatory reason for Plaintiff's termination that Plaintiff has not shown to be pretextual.

The Court need not reach Defendant's arguments regarding punitive damages, as summary judgment is warranted as to Defendant on both of Plaintiff's claims.

## CONCLUSION

For the reasons herein, Defendant's motion for summary judgment is **GRANTED**. The Clerk of Court is respectfully directed to terminate ECF No. 36 and close this case.

**SO ORDERED.**

Dated: August 31, 2021
     New York, New York

_____
    **ANDREW L. CARTER, JR.**
    **United States District Judge**